UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————

No. 19-CV-05609 (MKB) (RER)

———————————

THE RETIREMENT FUND OF LOCAL 1482 PAINT AND ALLIED PRODUCTS MANUFACTURERS, BY ITS TRUSTEE,

Plaintiff,

vs

NORTHERN ADHESIVES, INC. a/k/a NORTHERN ADHESIVES CO., INC.,

Defendant.

———————————

**Report & Recommendation**
May 27, 2020

———————————

TO THE HONORABLE MARGO K. BRODIE,
UNITED STATES DISTRICT JUDGE

**RAMON E. REYES, JR., U.S.M.J.:**

The Retirement Fund of Local 1482 Paint and Allied Products Manufacturers (the "Retirement Fund" or the "Plaintiff"), by its Trustee, brings this action against Northern Adhesives Co., Inc. ("Northern Adhesives" or the "Defendant"), alleging that it violated the Employee Retirement Income Security Act of 1974 ("ERISA") and the Labor-Management Relations Act of 1947 ("LMRA") by failing to make the required contributions to the Funds and the Union. (Dkt. No. 1 ("Compl.")).

Following the Defendant's failure to appear or defend against the claim, the Clerk of the Court entered default. (Dkt. No. 8). The Plaintiff moves for default judgment. (Dkt. No. 9). Your Honor referred the Plaintiff's motion for default judgment to me for a Report and Recommendation. (Order dated 12/7/2019). For the reasons which follow, I respectfully recommend that: (1) the Plaintiff's motion be granted, (2) the Plaintiff's request for an order requiring the Defendant to report all unreported hours of covered employment worked be granted, (3) the Plaintiff's request for contributions, surcharges, interest, and liquidated damages be denied without prejudice to renewal after Defendant's submission of hours of covered employment and (4) the Plaintiff be granted $6,610.00 in attorney's fees and $465.00 in costs.

1

## BACKGROUND

The Defendant is a party to a collective bargaining agreement (the "CBA") that binds it "to the terms of the Retirement Fund's Trust Agreement and plan documents." (Dkt No. 9-4 ("Shaffer Decl.") ¶¶ 8, 12; Dkt. No. 9-4, Ex. A ("Shaffer Ex. A")). The CBA automatically renews from year to year unless one of the parties provides written notice, within sixty days of the termination date, that it intends to discontinue or modify the agreement. (Shaffer Ex. A. at 14; *see also* Shaffer Decl. ¶ 9). The CBA was last modified by a Memorandum of Agreement (the "MOA") for the period beginning January 1, 2012, and ending December 31, 2014. (Shaffer Decl. ¶ 10; Shaffer Decl., Ex. B. ("Shaffer Ex. B.")). Following the most recent modification, neither the Plaintiff nor the Defendant gave "notice of intent to terminate or modify the CBA and MOA." (Shaffer Decl. ¶ 11).

In 2008, the Retirement Fund's actuary determined that the Retirement Fund had reached "critical status" and was in danger of becoming insolvent. (Compl. ¶ 14). Therefore, the Retirement Fund was required by ERISA to adopt a rehabilitation plan ("Rehabilitation Plan"). (Compl. ¶ 14–15). The Rehabilitation Plan is operative from September 1, 2010, and continues through August 31, 2020. (*Id.* ¶ 16). The terms of the Rehabilitation Plan "assessed a 5% surcharge . . . [the first year], and 10% for each successive year thereafter," on contributions from an employer. (*Id.* ¶ 17).

The Plaintiff brings this action alleging that the Defendant failed to remit contributions required by the CBA, from July 2019, to the filing of the Complaint. (Compl. ¶ 23). The Plaintiff further alleges that the Defendant failed to remit $1,876.55 in surcharges from July 2015 through June 2019, and failed to remit surcharges from July 2019 to the date of the Complaint. (*Id.* ¶¶ 27–28). Finally, the Plaintiff alleges that the Defendant failed to remit interest on all unpaid and late-paid contributions and surcharges for the periods at issue in this action. (*Id.* ¶ 33).

Before filing this suit, the Plaintiff sent a letter to the Defendant's Counsel requesting all delinquent payments from the Defendant. (Shaffer Decl. ¶¶ 20, 26, 33; Shaffer Decl., Ex. G. ("Shaffer Ex. G.")). After receiving a response from the Defendant's Counsel, stating that he passed the message along to the client, there was no further action by the Defendant. (Shaffer Decl., Ex. H. ("Shaffer Ex. H.")). Since the Defendant failed to respond to the Plaintiff's demand, the Plaintiff brought this action against the Defendant seeking to recover the delinquent payments. (Dkt. No. 9-3 ("Mem. in Support of Default J.") at 9). The Plaintiff served the Defendant and filed the Affidavit of Service with the Clerk of Court. (Dkt. No. 5). On November 12, 2020, the Defendant had not filed an answer, and the Clerk of Court entered a default against the Defendant. (Dkt. No. 8).

The Plaintiff has filed a motion seeking a default judgment against the Defendant. (Dkt. No. 9 ("Mot. for Default J.")). The Plaintiff claims it is entitled to "unpaid contributions, liquidated damages, and reasonable attorney's fees and costs" under ERISA, the LMRA, the CBA, and the plan documents. (Mem. in Support of Default J. at 5–6). Finally, the Plaintiff seeks an order to compel the Defendant to submit all remittance reports for the period relevant to this action. (*Id.* at 14).

2

## LEGAL STANDARD

Under Rule 55 of the Federal Rules of Civil Procedure ("Rule 55"), default judgment follows a two-step process. *Priestly v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). First, the plaintiff must obtain an entry of default from the Clerk of the Court. *Id.* at 504–505. If the defending party fails to "plead or otherwise defend . . . the clerk must enter the party's default." Fed. R. Civ. P. 55(a); *see also Priestly*, 647 F.3d at 504–505. Second, the moving party will then "seek a judgment by default under Rule 55(b)." Fed. R. Civ. P. 55(a). If the plaintiff provides an affidavit showing the amount sought is certain, the clerk must enter a default judgment. Fed. R. Civ. P. 55(b)(1). Otherwise, the plaintiff must request a default judgment by applying to the court. Fed. R. Civ. P. 55(b)(2).

After a default is entered, the court accepts the party's default as a "concession of all well-pleaded allegations of liability" in the complaint. *Greyhound Exhibitgroup Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). A default, however, does not provide a party "default judgment as a matter of right." *Bravado Int'l Grp. Merch. Servs. Inc. v. Ninna, Inc.*, 655 F. Supp. 2d 177, 186 (E.D.N.Y. 2009). When considering a motion for default judgment, the court must determine if the well-pleaded allegations in the complaint "provide a proper basis for liability and relief." *Rolls-Royce PLC v. Rolls-Royce USA, Inc.*, 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010).

Although a party's default is an admission to all well-pleaded allegations of liability, this admission does not apply to damages. *Cement and Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (quoting *Greyhound Exhibitgroup*, 973 F.2d at 158). In determining damages the court must decide if "there is sufficient evidence . . . upon a review of detailed affidavits and documentary evidence" to determine the amount. *Id.*

## DISCUSSION

### I. Liability

After reviewing the Complaint and accompanying materials, I respectfully recommend the Court enter default judgment against the Defendant for violations of ERISA § 515 and the LMRA § 301. The Defendant failed to remit contributions, surcharges, and remittance reports to the Plaintiff as required by the CBA and plan documents. (Compl. ¶ 37). These allegations provide a proper basis for liability and relief and are sufficient to grant default judgment against the Defendant.

An employer who fails to make contributions according to the terms of a multiemployer plan violates ERISA. 29 U.S.C. § 1145. Further, any employer who breaks their contractual obligations with a labor organization violates the LMRA. 29 U.S.C. § 185(a). Here, taking all well-pleaded allegations as true, the Retirement Fund is a multiemployer plan and the Defendant is an employer of the Retirement Fund. *See* 29 U.S.C. §§ 1002(3), (5), (9); (Compl. ¶¶ 5–6, 8). The Plaintiff and the Defendant have signed a CBA obligating the parties to its terms and conditions and all subsequent agreements. (Shaffer Decl. ¶ 8; Shaffer Ex. A. at 14). The Defendant, under the CBA and Trust Agreement, has an obligation to remit contributions and provide remittance reports for hours worked to the Retirement Fund. (Compl. ¶¶ 18, 22). With the adoption of the Rehabilitation Plan, the Defendant must also remit surcharges to the

3

Retirement Fund. (Compl. ¶ 26); *see* 29 U.S.C. § 1085. Accordingly, if the Defendant fails to make contributions, pay surcharges, or report hours to the Retirement Fund, it violates ERISA and its contractual obligations as required by the LMRA.

Critically, the Defendant has not paid contributions for the period beginning July 2019 through the filing of the Complaint. (Compl. ¶ 23). The Defendant has also failed to pay $1,876.55 in surcharges for the period between July 2015 through June 2019, and failed to pay any surcharges from July 2019 through the filing of the Complaint. (*Id.* ¶¶ 27–28). Finally, the Defendant has failed to report hours of covered employment as obligated by the CBA. (*Id.* ¶ 21). These allegations establish that the Defendant has violated ERISA by failing to make required contributions. 29 U.S.C. § 1145. The Defendant also violated the LMRA by failing to meet its contractual obligations under the CBA to report and remit contributions, surcharges, and hours of covered employment. 29 U.S.C. § 185(a). Therefore, the Plaintiff has sufficiently alleged a basis for liability and relief. Accordingly, I respectfully recommend that the Court grant Plaintiff's motion for default judgment.

## II.   Damages

When reviewing a motion for default judgment, the court has discretion to decide if there is "sufficient evidence" to award damages. *Metro Found. Contractors, Inc.*, 699 F.3d at 234. Evidence is sufficient if there is adequate detail to establish with "reasonable certainty" a basis for the damages requested in the default judgment. *Credit Lyonnais Sec., Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999); *Trs. of Local 7 Tile Indus. Welfare Fund v. City Tile, Inc.*, No. 10-CV-322 (SJ) (ALC), 2011 WL 917600, at *2 (E.D.N.Y. Feb. 18, 2011) (quoting *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)).

### A.   Injunctive Relief

The Plaintiff seeks an order requiring the Defendant to submit all outstanding remittance reports of covered hours worked. (Compl. at 7). Where the employer has refused or ignored the plan's requests for an audit or other documentation, the plan is eligible for injunctive relief. 29 U.S.C. § 1132(a)(3); *see also Ferrara v. A Star Business Servs. of N.Y. Corp.*, No. 11-CV-5841 (JS) (GRB), 2013 WL 1233114, at *6 (E.D.N.Y Feb. 26, 2013) (finding that a "refusal to submit to an audit thus triggered, independent of other legal consequences, a right for plaintiffs to seek and obtain an injunction ordering defendants to produce their books and records.").

Here, the Plaintiff has requested that the Defendant provide the missing remittance reports as required under the CBA. (Shaffer Decl. ¶¶ 20, 26, 33; Shaffer Ex. G.). Despite acknowledging receipt of the Plaintiff's letter sent in September 2019, the Defendant has not produced the requested reports. (Shaffer Decl. ¶¶ 23, 27, 34). Further, the Plaintiff requests these remittance reports to ensure "accurate allocation of contributions due can be made to Northern Adhesives' employees." (Mem. in Support of Default J. at 19). Accordingly, because the remittance reports should provide an accurate determination of the contributions owed to the Plaintiff, I respectfully recommend that the Court order the Defendant produce the missing remittance reports within 30 days of its ruling.

### B. Monetary Relief

Pursuant to ERISA § 502(g)(2) and the LMRA § 301(a), the Plaintiff seeks to recover unpaid contributions, surcharges, interest, and liquidated damages based on an estimation made by its third-party administrator. (Compl. ¶¶ 39, 43; *see generally* Shaffer Decl.). I respectfully recommend that the Plaintiff's request for this relief be denied without prejudice so that accurate calculations can be made after receipt of the remittance reports. Moreover, whether the Plaintiff would have succeeded in its monetary damages claim on the record currently before the Court is in question.

This Court has approved damages in ERISA default judgment cases where an audit has been completed and the evidence provided to the court is supported by the audit. *See Finkel v. Universal Elec. Corp.*, 970 F.Supp.2d 108 (E.D.N.Y. 2013); *Bricklayers Ins. and Welfare Fund, et al. v. J.K. Merillin Builders, Inc.*, No. 13-CV-1048, 2014 WL 6674404 (E.D.N.Y. Oct. 6, 2014). This Court has also approved damages where, despite not having performed an audit, the evidence provided by the defendant included paystubs, hourly reports, payroll reports, and documents of a similar nature. *See O'Donnell, et al. v. CJ Productions, Inc.*, No. 15-CV-5470 (MKB) (JO), 2017 WL 1207885 (E.D.N.Y. Feb. 22, 2017); *Boards of Trs. of the Ins., Annuity, Scholarship, and Apprenticeship Training Funds of Sheetmetal Workers' Int'l Assoc., Local Union No. 137 v. Midtown Neon Sign Corp.*, No. 09-CV-465 (FB), 2010 WL 1610994 (E.D.N.Y. Mar. 10, 2010), *R&R adopted by* 2010 WL 1611016 (E.D.N.Y Apr. 21, 2010).

Here, the Plaintiff supports its claim with a declaration and two-page spreadsheet from the Retirement Fund's third-party administrator who records and maintains records of payment and nonpayment to the Retirement Fund. **(**Shaffer Decl. ¶¶ 1–5; Shaffer Decl., Ex. I.). To determine the contributions owed for the period from July 2019 through October 2019, the third-party administrator made an estimation based on the "monthly amounts reported for the period September 2018 through June 2019." (Shaffer Decl. ¶ 28). The spreadsheet further notes that "[e]mployer contributions due for the months of July 2019 [through] October 2019 are based on the average number of hours worked during the period" from September 2018 through June 2019. (Shaffer Decl., Ex. I. at 125). Moreover, the second page of the spreadsheet provides a monthly break down of the hours worked for two people for the period from September 2018 through June 2019—presumably the individuals' whose hours are documented are the covered employees. (Shaffer Decl., Ex. I. at 126). However, it is unclear how the third-party administrator knows these individuals' hours and what reports the third-party administrator referenced to make his calculation as both the third-party administrator and the Plaintiff claim that the Defendant has not provided remittance reports of hours worked beginning in July 2015 through the time of the filing of the Complaint. (Shaffer Decl. ¶ 38; Compl. ¶ 19; Mem. in Support of Default J. at 9). If the hours are based on pay stubs or other underlying documents in the Plaintiff's possession, it would be prudent not only to say so but also to provide those documents. *See O'Donnell*, 2015 WL 1207885; *Midtown Neon Sign Corp.*, 2010 WL 1610994.

With the accuracy of the calculation of the contributions in question, much of the other monetary damages are also suspect because they "are dependent on an accurate accounting of delinquent contributions." *Trs. Of Local 813 Ins. Trust Fund v. All County Funeral Serv., Inc.*, No. 18-CV-737 (ENV)

5

(RER), 2019 WL 5088285, at *4 (E.D.N.Y. Aug. 7, 2019). For example, the calculations for both the surcharges (Compl. ¶ 17) and the liquidated damages (Shaffer Decl. ¶ 48) depend on the calculation of the unpaid contributions.

In addition, the report provided by the third-party administrator is unclear regarding the calculations for the late charges for all unpaid contributions and surcharges. The third-party administrator made the calculations through November 22, 2019. (Shaffer Decl., Ex. I. at 125). The spreadsheet notes that because the Plaintiff does "not have a break down by month, [it] estimated the late charges based on the midpoint for the period." (*Id.*). However, it is unclear what November 22, 2019 is the midpoint of. Moreover, given that the Plaintiff provided a monthly break down of hours worked for the covered employees for the period between September 2018 and June 2019, it is odd that it would not have a similar breakdown for the period after. (Shaffer Decl., Ex. I. at 126).

Without more, it is difficult to infer the accuracy of the report provided by the third-party administrator. However, because I recommend that the Court order the Defendant to provide the missing remittance reports, the Court need not make a final determination on this issue at this time. It would be imprudent to grant damages on estimated contributions when a concrete number may be provided. Accordingly, I respectfully recommend that the Plaintiff's request for unpaid contributions, interest on the unpaid contributions, and liquidated damages be denied without prejudice to renewal.

### C. Attorney's Fees and Costs

The Plaintiff seeks attorney's fees in the amount of $6,610.00 and costs in the amount of $465.00. (Adler Decl. ¶¶ 23, 28). Under ERISA, a court must award reasonable fees and costs to a plan which receives a judgment for unpaid contributions in its favor. 29 U.S.C. § 1132(g)(2)(D). Further, according to the Retirement Fund's Collection Procedures, the plan expressly adopts the language in ERISA allowing for compensation of attorney's fees and costs. (Shaffer Decl., Ex. D at 100–101). Therefore, I respectfully recommend that the Court grant the Plaintiff's request for attorney's fees and costs.[1]

It is routine to calculate attorney's fees using the "lodestar method," which takes "the product of a reasonable hourly rate and the reasonable number of hours required by the case" to establish a reasonable fee. *Trs. of the Empire State Carpenters Annuity, Apprenticeship, Labor Mgmt. Cooperation, Pension and Welfare Funds v. Lynnview Constr. Corp.*, No. 12-CV-5644 (ADS) (AKT), 2013 WL 4852312, at *10 (E.D.N.Y Sep. 10, 2013) (adopting report and recommendation); *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010); *Millea v. Metro-North R. Co.*, 658 F.3d 154 (2d Cir. 2011). Reasonable rates may be determined by reviewing similar rates in the district in which the court sits. *Lynnview Constr. Corp.*, 2013 WL 4852312, at *10 (citing *Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2nd 23, 25 (2d Cir. 1983)). Reasonable hours may be determined by the court's experience, the court's knowledge of the case, and the evidence and arguments presented. *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992) (citing *Di Filippo v. Morizio*, 759 F.2d 231, 234 (2d Cir. 1985)). This Court has found

---

[1] The recommended amount of fees and costs here are for work completed up to and including this motion. Such an award should not preclude the Court from awarding additional fees in relation to future motions.

6

reasonable rates for the Eastern District ranging from $300 to $450 per hour for partners, $200 to $300 per hour for senior associates, $100 to $200 per hour for junior associates, and $70 to $100 per hour for paralegals. *Division 1181 Amalgamated Transit Union–N.Y. Employees' Pension Fund v. D & A Bus Co., Inc.*, 270 F. Supp. 3d 593, 618–19 (E.D.N.Y. 2017) (collecting cases); *see also Konits v. Karahalis*, 409 Fed.Appx. 418, 422 (2d Cir. 2011) (affirming district court determination that "prevailing rates for experienced attorneys in Eastern District of New York cases range from approximately $300-400 per hour"); *Pilitz v. Incorporated Vill. of Freeport*, No. 07-CV-4078 (ETB), 2011 WL 5825138, at *4 (E.D.N.Y. Nov. 17, 2011) (finding that in the Eastern District of New York, "reasonable hourly rates are approximately $300-$450 per hour for partners, $200-$300 per hour for senior associates, and $100-$200 per hour for junior associates"). When a party seeks reimbursement, it must convince the court that the rates and hours are reasonable and are "supported by contemporaneous time records, affidavits, and other materials." *Trs. of the Pavers and Rd. Builders Dist. Council Welfare, Pension, Annuity and Apprenticeship, Skill Improvement and Safety Funds v. Dr. Gangi Contracting Corp.*, No. 16-CV-02938 (ARR) (RER), 2017 WL 3447758, at *5 (E.D.N.Y. May 12, 2017), *R&R adopted by* 2017 WL 3432363 (E.D.N.Y. Aug. 9, 2017).

Here, the Plaintiff seeks $6,610.00 in compensation for a total of 14.8 billable hours. (Adler Decl. ¶ 23). Michael Adler ("Adler") is a partner at Cohen, Weiss and Simon and has experience litigating over 200 ERISA cases. (Adler Decl. ¶ 24). George Kramer ("Kramer") is a paralegal at Adler's firm and has been employed there since 2002. (Adler Decl. ¶ 25). To support its claim for attorney's fees, the Plaintiff includes an affidavit with time records displaying the date, timekeeper, description of the activity, and total hours worked on that activity by the tenth of an hour. (Adler Decl., Ex. D). Adler, the attorney of record, billed 13.1 hours at a rate of $400 per hour. (Adler Decl. ¶ 23; Adler Decl., Ex. D). Additionally, Kramer, the paralegal, billed 1.7 hours at a rate of $100 per hour. (Adler Decl. ¶ 23; Adler Decl., Ex. D). These hourly rates are reasonable for this District and the Plaintiff's submissions adequately support its request. Therefore, I respectfully recommend attorney's fees be granted in the amount of $6,610.00.

When a prevailing party seeks to recover those costs associated with the prosecution of an action, the court is permitted to award reasonable expenses incurred by the attorneys and charged to clients. *D & A Bus Co., Inc.*, 270 F. Supp. 3d at 628 (E.D.N.Y 2017). Here, the Plaintiff seeks reimbursement of $400.00 in court filing fees and $65.00 in service process fees. (Adler Decl. ¶ 28). It is well-established that courts grant reimbursement of both the court filing fees and the service of process fees if they are both substantiated and reasonable. 28 U.S.C. § 1920; *D & A Bus Co., Inc.*, 270 F. Supp. 3d at 628 (E.D.N.Y 2017). Here, the Plaintiff substantiates its costs request with receipts and are reasonable. (Adler Decl., Ex. E.). Accordingly, I respectfully recommend costs be granted in the amount of $465.00.

## **CONCLUSION**

For the reasons within, I respectfully recommend that the Court grant the Plaintiff's motion for default judgment, the Plaintiff's request for an injunction ordering the Defendant to hand over all outstanding remittance reports, and Plaintiff's request for attorney's fees and cost. I also respectfully recommend that the Court deny the

7

Plaintiff's request for monetary damages without prejudice.

The Plaintiff is hereby directed to serve a copy of this Report and Recommendation upon the Defendant by regular and certified mail and to file proof of service on CM/ECF. Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable Margo K. Brodie within fourteen days of receipt hereof. Failure to file timely objections waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

**RESPECTFULLY RECOMMENDED.**

*Ramon E. Reyes, Jr.*
RAMON E. REYES, JR.
United States Magistrate Judge
Dated: May 27, 2020
Brooklyn, New York

8